IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| WEST MEADE PLACE LLP, d/b/a THE HEALTHCARE CENTER AT WEST MEADE PLACE, | ) ) ) ) | **COMPLAINT** |
| Defendant. | ) ) | JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (ADA), 42 U.S.C. § 12112, and Title I of the Civil Rights Act of 1991 (CRA), 42 U.S.C. § 1981a, to correct unlawful employment practices based on disability and to provide appropriate relief to Carma Kean, who was adversely affected by such practices.

As alleged with greater particularity in paragraphs 15 and 19 below, Plaintiff Equal Employment Opportunity Commission claims Defendant West Meade Place LLP d/b/a The HealthCare Center at West Meade Place (Employer), violated the ADA by failing to provide a reasonable accommodation to Kean, and discharging Kean because of her disability.

## JURISDICTION AND VENUE

1. The Commission invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference § 706(f)(1)

and (f)(3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), (3), and pursuant to § 102 of the CRA, 42 U.S.C. § 1981a.

2. Defendant Employer committed the employment practices alleged to be unlawful within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. The Commission is the agency of the United States charged with administering, interpreting, and enforcing Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(f)(1), (3).

4. Defendant Employer owns and operates a skilled nursing and rehabilitation center, known as The HealthCare Center at West Meade Place, located at 1000 St. Luke Dr., Nashville, Tennessee 37205.

5. At all relevant times, Defendant Employer has been doing business continuously in the State of Tennessee and the City of Nashville and has at least 15 employees.

6. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

7. At all relevant times, Defendant Employer has been a covered entity under 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Kean filed a charge with the Commission alleging Defendant Employer violated Title I of the ADA.

9. On July 21, 2017, the Commission issued to Defendant Employer a Letter of Determination, finding reasonable cause to believe Defendant Employer violated the ADA and invited Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and to provide appropriate relief.

10. The Commission engaged in communications with Defendant Employer to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant Employer a conciliation agreement acceptable to the Commission.

12. On September 12, 2017, the Commission issued to Defendant Employer a Notice of Failure of Conciliation.

13. The Commission has fulfilled all conditions precedent to the filing of this lawsuit.

## STATEMENT OF CLAIMS

### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

14. Since at least November 2015, Defendant Employer engaged in unlawful employment practices in violation of Title I of the ADA, 42 U.S.C. § 12112(a).

15. The unlawful employment practices include, failing to provide a reasonable accommodation to Carma Kean during her employment because of her disability, an

anxiety disorder.

- a. Defendant Employer hired Kean as a Laundry Technician on or around February 6, 2015.
- b. Kean has received treatment for anxiety for over eleven years; she regularly takes prescription medication and sees a doctor for treatment.
- c. Kean's disability substantially limits her brain function, i.e., the ability to regulate thought processes and emotions.
- d. Kean's disability substantially limits her ability to think, to concentrate, to interact with others, and interferes with her daily activities.
- e. Early in Kean's tenure with Defendant Employer, management would allow Kean to leave early to accommodate flare-ups of her anxiety.
- f. On November 17, 2015, Kean met with Defendant Employer's payroll director, Deborah Varden (Varden) and requested a reasonable accommodation of her disability, namely intermittent leave under the Family Medical Leave Act (FMLA).
- g. Kean requested one to three days off per month to deal with flare-ups of her anxiety and three to four days off per year to seek treatment for her anxiety in an FMLA leave form completed by her treating physician.
- h. On November 18, 2015, Kean met with Defendant Employer's nursing director, Teresa Jarvis (Jarvis). Jarvis informed Kean she was ineligible for FMLA leave; Kean had not worked the required one year.
- i. Jarvis required Kean to present a second note from her treating physician clearing Kean to work without restrictions.

j. Jarvis stated to Kean at the November 18 meeting: "[Y]ou have brought this problem to us. We now have to make you go back to the doctor, because we can't let you work here when you have an issue."

k. Jarvis also told Keen she need to go back to the doctor.

l. Further, Jarvis said to Kean because she did not qualify for FMLA, Kean did not fall within the protected class, and that made Kean unable to perform her job duties. "And we have to either let you go, because you can't perform it safely, or we have to get a statement from your doctor saying that you do."

m. Jarvis sent Kean home from work on November 18, despite Kean working a full shift on November 17 and as much as Defendant Employer would allow her to work on November 18.

n. Kean was qualified for her position as Laundry Technician with or without a reasonable accommodation.

o. Keen's doctor's office contacted Jarvis on November 19. During that conversation, Jarvis told the doctor's staff that the doctor needed to reevaluate Kean. Then, the doctor needed to submit a letter to Defendant Employer's payroll director stating Kean could perform her duties without medical restriction and without any emotional distress.

p. Shortly after Jarvis spoke to Keen's doctor's office on November 19, Jarvis terminated Kean's employment with Defendant Employer, effective immediately.

q. At no point did Varden or Jarvis attempt to engage in an interactive process with Kean to identify an accommodation of her disability.

r. At no point did Varden or Jarvis provide Kean with a reasonable accommodation of her disability.

16. Defendant Employer's failure to grant Kean's request for an accommodation resulted in her eventual discharge, as alleged below in paragraph 19.

17. The effect of the practices complained of in paragraph 15 above, has been to deprive Kean of equal employment opportunities and otherwise adversely affect Kean's status as an employee because Defendant Employer failed to provide a reasonable accommodation to Keen during her employment.

## DISCHARGE BECAUSE OF KNOWN DISABILITY

18. Since at least around November 2015, Defendant Employer engaged in unlawful employment practices at its Nashville, Tennessee facility in violation of Title I of the ADA, 42 U.S.C. §12112(a).

19. The unlawful employment practices include discharging Kean because of her disability.

   a. The Commission incorporates by reference paragraphs 15 a to r.

   b. Kean has an impairment, anxiety disorder.

   c. Kean has received treatment for the anxiety disorder.

   d. Kean's anxiety disorder impairment substantially limits her brain function.

   e. When Defendant Employer hired Kean, she told her manager about her anxiety and medication.

   f. On or around November 18, 2015, Kean met with Defendant Employer's nursing director, Theresa Jarvis.

   g. Kean told Jarvis about her anxiety and requested leave.

h. Jarvis told Kean normally Defendant Employer would not provide leave for anxiety.

i. Jarvis then requested Kean return to her doctor and obtain a full medical release to return to work.

j. Around November 19, 2015, Jarvis telephoned Kean's doctor. Jarvis informed the doctor that Kean needed a reassessment by the doctor prior to releasing her to return to work.

k. Jarvis also advised the doctor that the letter needed to state Kean could "perform the job duties without medical restrictions and no emotional distress can happen."

l. Before Kean could obtain a release from her doctor, Jarvis terminated Keen's employment.

m. Kean was qualified to perform the Laundry Technician job and was performing the job duties without a reasonable accommodation.

n. On November 20, 2015, Kean's doctor's office spoke to Jarvis and advised the doctor would write a letter stating Kean could work without restrictions.

o. Jarvis responded it did not matter because Kean no longer worked there.

p. Defendant Employer failed to provide Kean with leave as a reasonable accommodation under the ADA.

q. Defendant Employer discharged Kean because of her anxiety disorder.

20. The effect of the practices complained of in paragraph 19 above, has been to deprive Kean of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

21. The effect of the policy and practices complained of in paragraph 19 above has been to deprive Kean of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

22. The unlawful employment practices complained of in paragraphs 15 and 19 were intentional.

23. The unlawful employment practices complained of in paragraphs 15 and 19 were done with malice or with reckless indifference to the federally protected rights of Kean.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, employees, agents, servants, attorneys, successors, assigns, and all persons in active concert or participation with it, from failing to provide reasonable accommodations to disabled employees, and from discharging employees because of their known disability.

B. Order Defendant Employer to institute and carry out appropriate policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, that eradicate the effects of its past and present unlawful employment practices, and that prohibit Defendant Employer from failing to provide reasonable accommodations to disabled employees, and from discharging employees because of their known disabilities.

C. Order Defendant Employer to make whole Kean by providing, where appropriate, back pay with prejudgment interest, in amounts to be determined at trial, front pay, and other affirmative relief necessary to eradicate the effects of its unlawful

employment practices;

D.      Order Defendant Employers to make whole Kean by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 15 and 19, including relocation expenses, job search expenses, and medical expenses, in amounts to be determined at trial;

E.      Order Defendant Employer to make whole Kean by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs 15 and 19, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F.      Order Defendant Employer to pay Kean punitive damages for its malicious and reckless conduct, as described in the foregoing paragraphs, in amounts to be determined at trial;

G.      Grant such further relief as the Court deems necessary, proper, and in the public interest; and

H.      Award the Commission its costs for this action.

## JURY TRIAL DEMAND

The Commission demands a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted,

**JAMES L. LEE**
Acting General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

**FAYE A. WILLIAMS**
Regional Attorney
TN Bar No. 11730

**GERALD L. THORNTON, SR.**
Supervisory Trial Attorney
TN Bar No. 015898

*s/ Markeisha K. Savage (with permission)*
**MARKEISHA K. SAVAGE**
Trial Attorney
TN Bar No. 024693
markeisha.savage@eeoc.gov

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Memphis District Office
1407 Union Avenue
Memphis, TN 38104
Telephone (901) 544-0133

*s/ Mark Chen*
**MARK CHEN**
Trial Attorney
TN Bar No. 14268
mark.chen@eeoc.gov

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
220 Athens Way, Suite 350
Nashville, TN 37228
Telephone (615) 736-5784